IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| EDDIE HILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:08-CV-235 |
| | § | |
| MICHAEL J. ASTRUE, Commissioner, | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
TO REVERSE THE DECISION OF THE COMMISSIONER**

Plaintiff EDDIE HILL brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for supplemental security income benefits and for disability insurance benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED.

I.
PROCEDURAL BACKGROUND

Plaintiff filed for supplemental security income benefits and for disability insurance benefits on April 4, 2006 and November 2, 2006, respectively. (Transcript [hereinafter Tr.] pg. 9). Both applications alleged disability due to high blood pressure and pain in plaintiff's back, neck, chest, left leg, both knees, and both hands. Both applications alleged the disability began on April 20, 2002. (*Id.* 11, 71, 78).

An administrative hearing was held on December 10, 2007. (*Id.* 372). At the time of the hearing, plaintiff was fifty-two-years old and had past relevant work experience as a yard worker, material handler, laborer, and auto detailer. (*Id.* 412). On June 20, 2008, the ALJ issued an unfavorable decision, denying plaintiff disability benefits at step four of the five-step sequential analysis. (*Id.* 16). Upon the Appeals Council's denial of plaintiff's request for review, the ALJ's determination that plaintiff is not under a disability became the final decision of the Commissioner. (*Id.* 2). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

II.
ISSUES PRESENTED

Plaintiff contends the Commissioner erred by:

1. Determining plaintiff could perform work at the medium exertional level, and

2. Determining plaintiff could return to his past relevant work.

III.
STANDARD OF REVIEW

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). A worker is disabled if he cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of twelve months. *Id.* § 423(d)(1)(A). The Commissioner has promulgated a five-step sequential evaluation process the ALJ must follow in making a disability determination. *See* 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of the analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). At the fifth step, the burden then shifts to the Commissioner to show the claimant is capable of performing work in the national economy. *Id.*

In reviewing the propriety of an ALJ's decision that a claimant is not disabled, the reviewing federal court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is more than a scintilla but less than a preponderance. *Id.,* 91 S.Ct. at 1427. To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). While procedural perfection is not required, the ALJ does have a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). The level of review is not *de novo*. Even if the ALJ *could* have found plaintiff to be disabled, the only issue a reviewing federal court may rule on is whether there was substantial evidence to support the ALJ's

decision.

## IV.
## MERITS

Plaintiff contests the ALJ's determination at step four of the sequential five-step evaluation of disability. In his first ground of error, plaintiff contends the ALJ erred by concluding he could perform medium-level exertional work. Specifically, plaintiff avers there was no evidence in the medical record supporting the determination he can lift or carry fifty pounds. Plaintiff takes issue with the ALJ's failure to address an MRI indicating plaintiff had back problems in favor of relying on an x-ray indicating any back problems were minimal. In his second ground of error, plaintiff contends the ALJ erred by concluding he could return to his past relevant work. Plaintiff avers the ALJ failed to conduct a meaningful evaluation of plaintiff's residual functional capacity (RFC) or of the requirements of plaintiff's past relevant work in comparison to his RFC. Plaintiff states his back pain precludes his ability to perform medium-level work or return to his past relevant work.

### A. Medical Evidence Regarding Plaintiff's Back Pain

At the hearing, plaintiff stated he was first diagnosed with a herniated disk in the 1980's. (Tr. 385). The medical evidence of record before this Court, however, indicates plaintiff first reported back pain in July 2002, three months after the April 2002 car wreck which provides the alleged onset date for plaintiff's disabilities. (Tr. 9, 330-31). In August 2002, Dr. Gayle Bickers indicated plaintiff's "dorsal vertebrae are intact with no post-traumatic abnormality. Minimal marginal osteophyte formation is noted at C7-8 level." (Tr. 306). Plaintiff's "lumbar vertebrae are normally aligned with no post-traumatic or degenerative change. Intervertebral disk spaces are normal. No spondylolisthesis is seen." (*Id.*). Dr. Bickers's diagnostic conclusion was that both the dorsal and lumbar spine were normal. (*Id.*).

In September 2002, Dr. Ben Glover likewise noted that the results of an MRI of plaintiff's cervical spine indicated there was "[n]o evidence of acute or subacute traumatic injury" in plaintiff's back. (*Id.* 298). An MRI of plaintiff's lumbar spine indicated plaintiff likely had a small hemangioma, some degenerative signal irregularity, and mild to moderate narrowing of the L4-5 and L5-S1 disks. (*Id.* 299). Dr. Glover concluded plaintiff had moderate L4-5 degenerative spondylosis. (*Id.* 300). The doctor noted the MRIs of the back "do not show an[y] changes which have a surgical solution." (*Id.* 280). The same day as he made this conclusion, Dr. Glover issued a Medical Release/Physician's Statement to the Texas Department of Human Services indicating plaintiff was temporarily disabled (from April 20, 2002 until November 22, 2002) due to chest wall pain secondary to a motor vehicle accident and to lower back and neck pain. (*Id.* 307).

On November 22, 2002, plaintiff returned to Dr. Glover. At that time, Dr. Glover noted plaintiff's "back pain has improved" and there was "no tenderness in back." (*Id.* 278). Plaintiff still claimed to be unable to work, but such disability was based on musculoskeletal chest pain rather than back pain. (*Id.*). On January 31, 2003, plaintiff again returned to Dr. Glover. Dr. Glover, referencing plaintiff's chest wall injury, noted plaintiff suffered from musculoskeletal pain. (*Id.* 274). Plaintiff's back was never specifically mentioned in the doctor's notes from the January 2003 appointment. In June 2003, plaintiff returned to Dr. Glover. Dr. Glover noted plaintiff had returned for a check up and had suffered from chest pain. (*Id.* 271). Again, the doctor's notes do not mention a history of back pain. The doctor wrote "only intermittent pain now. He is much better." and "Musculoskeletal pain nearly resolved." (*Id.*). In August and September 2003, plaintiff continued to complain about his chest pain; he did not complain specifically about back pain, although he did tell a doctor that he received a back injury from a motor vehicle accident. (*Id.* 252, 269).

There appear to be no medical records for 2004 or 2005. In April 2006, plaintiff filed an application for supplemental security income. (*Id.* 9). In September 2006, Dr. Mary Burgesser ordered an x-ray of plaintiff's spine for disability evaluation purposes. (*Id.* 250). Based on the x-ray, Dr. Burgesser reported "[o]nly minimal degenerative changes are noted in the dorsal spine." (*Id.* 241, 250). Likewise Dr. Burgesser concluded, "[o]nly minimal degenerative changes are seen in the lumbar spine in the form of tiny marginal osteophytes. The disk spaces are preserved in height. Alignment is satisfactory. The pedicles are intact. There is no evidence of spondylosis or spondylolisthesis." (*Id.* 242).

In December 2006, plaintiff was seen by Dr. Ricardo Carrizo. The notes from that visit indicate plaintiff said he was not in pain and further reflect plaintiff was not taking any medication at the time. (*Id.* 204). Plaintiff's chief complaint was high blood pressure. (*Id.*). The report noted plaintiff had a history of chronic neck and lower back pain. (*Id.*). During the examination that day, the doctor noted "[t]here is some tenderness to the palpation of the lumbar spine." (*Id.*). Dr. Carrizo diagnosed plaintiff as having hypertension and osteoarthritis. (*Id.* 205).

On February 12, 2007, plaintiff returned to Dr. Carrizo. Plaintiff indicated he was not in any pain at the time of the appointment. (*Id.* 163). Plaintiff stated, it "is getting hard for him to work and move around counting on a pain in the chest, lower back and left knee." (*Id.*). During this appointment, plaintiff again had "some tenderness to the palpation of the lower back." (*Id.* 166). An x-ray of plaintiff's lower spine taken on the day of the examination indicated plaintiff had "mild thoracolumbar scoliosis." (*Id.* 162). At the conclusion of the appointment, Dr. Carrizo ordered a MRI of plaintiff's back. (*Id.* 166-67). On February 15, 2007, a MRI of plaintiff's lower spine was taken. Upon reviewing the MRI, Dr. Carrizo determined, "[t]here is a broad-based moderately

compressive central disk protrusion/herniation at the L4-5 level. There is early intradiskal desiccation at this level. There appears to be mild sagittal canal stenosis at L5-S1. No other significant extradural findings are noted." (*Id.* 160).

In June 2007, plaintiff returned to Dr. Carrizo. Plaintiff told Dr. Carrizo he was trying to carry a TV when he fell and hurt his hip. (*Id.* 154). Plaintiff indicated the pain from the hip injury was at a "ten." (*Id.* 153). The doctor's notes indicate "[p]atient is known to have some lumbar stenosis and a lumbar herniated disk, he has tried to work but he claims that the pain got t[o] be so bad he had to quit the lifting and pushing was affecting his back." (*Id.* 154). Dr. Carrizo did not note that plaintiff had any tenderness when the doctor palpated plaintiff's back. (*Id.* 155). The doctor noted plaintiff's "Problem #1" was an accidental fall and "Problem #2" was hypertension. (*Id.* 155-56). The doctor did not indicate plaintiff was suffering from any back pain at the June 12, 2007 visit. The doctor did, however, indicate in a June 19, 2007 letter that plaintiff suffered from chronic low back pain, osteoarthritis, and hypertension and was in physical therapy. (*Id.* 148).

As June 2007 progressed, plaintiff continued to seek refills for his pain medication. (*Id.* 140). Dr. Carrizo indicated "[p]atient is known to have a herniated disk in his lumbar spine, he will be given a refill on his pain medication, but explain to him that a referral will be given for him to see a neurosurgeon as if the pain is getting out of control that [sic] will be the right way to proceed." (*Id.*). Plaintiff told Dr. Carrizo's nurse, "he wants to think about seeing a neurosurgeon. I explained to him he could not continue with the Lortab. States he will let us know." (*Id.*).

In July 2007, Dr. Carrizo gave plaintiff another refill on his pain medications for sixty days, during which time, the doctor noted, plaintiff would be seen by Dr. Errrington, a neurosurgeon. (*Id.* 135). The appointment with Dr. Errington was scheduled for the end of August 2007. On August

5, 2007, plaintiff again asked for a refill on his Lortab, and Dr. Carrizo issued a prescription for sixty more pills. On August 7, 2007, plaintiff again asked for a Lortab refill. (*Id.*). Dr. Carrizo indicated, "no more refills will be given until patient sees the neurosurgeon." (*Id.*). Plaintiff again called on August 9, 2007, August 20, 2007, and August 23, 2007 asking for more Lortab, which requests were denied. (*Id.* 132-33, 126). On August 28, 2007, plaintiff saw Dr. Carrizo. (*Id.* 127). Plaintiff was complaining of low back pain, which he described as a "seven" on the pain scale. (*Id.*). Plaintiff was taking NSAIDS, muscle relaxant, and Lortab for the pain. (*Id*). The doctor's notes indicate plaintiff was suffering from "mild pain/distress," "some tenderness to the palpation of the lower back," and "some limitation elevating the left lower extremity." (*Id.* 129-30). Dr. Carrizo indicated "Problem #1" at the visit was a herniated lumbar disk, "Problem #2" was hypertension. (*Id.* 130).

Dr. Carrizo's notes indicate that after the August 28, 2007 appointment, plaintiff was evaluated by Dr. Errington, a neurosurgeon, for resolution of the back pain. (*Id.* 121). The neurosurgeon's notes are not part of the medical record before this Court. However, Dr. Carrizo's notes indicate Dr. Errington determined there was no need for any surgical treatments and recommended plaintiff needed a pain management evaluation. (*Id.*). Dr. Carrizo then referred plaintiff to Dr. Dennis Ice, a pain management specialist. (*Id.* 120). Plaintiff was to see Dr. Ice on September 20, 2007, but there is nothing in the medical evidence of record establishing whether Dr. Ice ever saw plaintiff and what his recommendations were if he did evaluate plaintiff. (*Id.* 120). Testimony at the beginning of the hearing before the ALJ established the record at the time of the hearing did not contain the notes from Dr. Ice or from Dr. Bennington, who plaintiff indicated was the neurosurgeon he saw, not Dr. Errington. (*Id.* 375). Plaintiff's representative stated to the ALJ he would supplement the record with the reports from both doctors. (*Id.*) The ALJ indicated he

would keep the record open for supplementation, but the doctors' reports are not found in the record (*Id.*).

### B. *The ALJ's Decision*

In his June 20, 2008 Decision, the ALJ found plaintiff had not engaged in substantial gainful activity since plaintiff's alleged onset date and had the severe impairments of degenerative disk disease of the lumbar spine and hypertension. (*Id.* 11). The ALJ found, however, plaintiff did not have an impairment or combination of impairments meeting any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). Finally, the ALJ found plaintiff had "the residual functional capacity to perform medium work, requiring him to lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, and involves only routine, repetitive tasks in an environment which does not require fast-paced production." (*Id.* 12); *See* 20 C.F.R. § 416.968(c). Based on this finding, the ALJ determined plaintiff was capable of performing his past relevant work as a laborer, and, therefore, was not disabled. (*Id.* 15).

The ALJ additionally found plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (*Id.* 12). The ALJ then set forth his reasons for his belief that plaintiff's statements were not credible:

> The claimant returned [to] the emergency room on April 22, 2002, with continued complains of chest, neck and leg pain, as well as right wrist pain. Nevertheless, a physical examination at that time yielded no abnormalities. The claimant indicated he had yet to fill his prescription for Lortab. Interestingly, the treating physician noted that although examination of the claimant's cervical spine was unremarkable, he requested a soft collar for comfort. Additionally, although the claimant was supposedly unemployed, he requested a work note.

>	The subsequent treatment records dated through August 30, 2002, indicate that the claimant expressed complaints of low back, chest, abdominal and left arm pain. However, findings upon examinations during this period were fairly minimal . . .
>	On December 14, 2006, the claimant presented to his treating physician . . . Aside from some tenderness to palpation of the lumbar spine, a physical examination of the claimant was normal. I must emphasize the fact that the claimant stated he was not taking any medication at that time. The subsequent treatment records dated February 12, 2007 through September 25, 2007, indicate that the claimant continued to express complaints of symptoms associated with his high blood pressure, and joint, low back and left lower extremity pain. Despite the claimant's complaints, findings upon examinations have been minimal, and the claimant has exhibited no difficulties with lifting, standing, walking, sitting, or using his bilateral upper extremities for reaching and fine/gross manipulation.
>	In an August 2007 treatment note, the claimant's primary care physician concluded that even though the claimant had a herniated disk, the claimant only had "<u>mild</u> pain/distress," "<u>some tenderness</u> to the palpation of the lower back," and "<u>some limitation</u> elevating the left lower extremity up to 30 degrees." Dr. Carrizo's diagnosis mirrors the DDS's doctor's previous December 2006 conclusion that the "[a]lleged limitations due to symptoms [are] not supported by the [medical evidence of record] and other [evidence of record]."
>	While the claimant has sought treatment for his alleged disabling impairments, he has not received the sort of care one would expect for a totally disabled individual . . . Despite the claimant's alleged symptoms and limitations, he has not been restricted in any way by any treating physician.

(Tr. 12-14) (internal citations omitted) (emphasis in original).

In sum, the ALJ discussed plaintiff's statements and the reasons why he did not think plaintiff's statements were credible. Also, in reviewing the medical evidence of record, the ALJ discussed records of doctors' appointments and medical tests from 2002 through 2007. (*Id.* 12-14). Although he recognized plaintiff had a herniated disk, the ALJ did not address the February 2007 MRI of plaintiff's lower spine, which revealed "a broad-based moderately compressive central disk protrusion/herniation at the L4-5 level." (*Id.* 14, 60). Although he discussed the fact the plaintiff was not taking medication in December 2006, the ALJ did not discuss plaintiff's marked increase in the amount of pain pills he needed beginning in June 2007 nor the fact that he reported his back

pain was at a "seven" even when he was taking pain pills. (*Id.* 127-33).

### C. The Disabling Effects of Plaintiff's Back Pain

The medical evidence of record indicates plaintiff first reported back pain in July 2002, (*Id.* 9, 330-31), but the issue was resolved by November 2002. (*Id.* 278). Plaintiff did not, on the record, complain of back pain again until he filed for disability benefits in April 2006, which was over three years after any back problem was resolved. The following professional evaluation in September 2006 indicated plaintiff had "[o]nly minimal degenerative changes . . . in the lumbar spine in the form of tiny marginal osteophytes." (*Id.* 242). The first indication of a real issue regarding plaintiff's back that could be a source of pain was noted in December 2006, when Dr. Carrizo reported plaintiff had some tenderness in his back. (*Id.* 204). Even then, plaintiff stated he was not in any pain and was not taking any medications. (*Id.*). There was no medical evidence of plaintiff having a herniated disk until the February 2007 MRI. (*Id.* 160).

At the hearing before the ALJ, plaintiff testified he had been diagnosed with a herniated disk in the 1980's. (*Id.* 385). Plaintiff asked for disability benefits with an onset date of April 20, 2002. (*Id.* 9). Despite his allegation that he was disabled, however, plaintiff himself stated he worked from March 2000 until June 2007. (*Id.* 66). He worked as a landscaper, where he would cut grass with a push mower, edge, trim, clean the yard, and put debris from the yard into the dumpster, and as a hide cutter. (*Id.* 66, 377). During that time period, plaintiff also briefly worked as a car detailer. (*Id.*). While plaintiff did sell his landscaping business in March 2007, he testified that the reason he sold it was not due to any back problems but due to the cut grass making him cough. (*Id*. 378). Plaintiff indicated he was forced to quit his job as a hide cutter in June 2007 because of his back, which was approximately four months after the MRI indicating plaintiff had a herniated disk. (*Id.*

377).

Given this record, if plaintiff was contending his back pain, alone, totally disabled him from 2002 to 2007, plaintiff's argument of disability fails. This, however, is not plaintiff's contention. Rather, plaintiff avers his herniated disk, and pain attendant thereto, is disabling to the point that it prohibits him from performing medium-level work, i.e. lifting twenty-five pounds frequently and fifty pounds occasionally. Therefore, this Court's determination centers on whether the record as a whole contains substantial evidence to support the Commissioner's finding that plaintiff can perform medium-level work. *See Anderson*, 887 F.2d at 633.

The ALJ in the instant case evaluated the medical records. He discussed many of the doctors' conclusions along with plaintiff's behavior at the appointments. The ALJ considered plaintiff's symptoms and the extent to which the symptoms could be accepted as consistent with the objective medical evidence. *See* 20 C.F.R. § 404.1529. The ALJ made affirmative findings regarding plaintiff's complaints. *See Falco*, 27 F.3d at 163. The ALJ did not, however, discuss the February 2007 MRI, which was the major medical report objectively establishing plaintiff had problems with his back. He also failed to discuss plaintiff's increasing need for pain pills beginning in June 2007 and the fact that plaintiff's pain level was at a "seven" even with the pain pills. It seems incongruous for the ALJ to use as a basis for discrediting plaintiff's complaints the fact that he was not taking medication and not in pain but yet ignore plaintiff's later complaints of back pain which *were* accompanied by the need for pain pills and which pain was not alleviated by the pain pills. *See Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (holding a reviewing court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the

reviewing court cannot tell if significant probative evidence was not credited or simply ignored.").

As far as the evidence of record analyzed by the ALJ, none of the reports in the record reviewed by the ALJ contain any indication of plaintiff's actual lifting abilities. There are no objective medical facts, diagnoses, or opinions of treating or examining physicians indicating how much plaintiff is able to lift. The only evidence on record regarding plaintiff's lifting abilities is from plaintiff himself, who testified that he had difficulty lifting anything over twenty pounds. (*Id.* 391). While the ALJ found plaintiff's testimony not to be credible, there is nothing from any medical source, such as a doctor, physical therapist, or nurse, to contradict plaintiff's testimony. Put another way, the only evidence from which the ALJ had to choose regarding plaintiff's lifting abilities came from plaintiff himself. There is a "conspicuous absence of credible choices," provided by the record upon which the ALJ could rely in determining plaintiff could lift up to fifty pounds. *See Hames*, 707 F.2d at 166.

Plaintiff's inconsistent history of seeking treatment for his back problems and his ability to continue working for at least part of the time during which he contends he was disabled arguably support the ALJ's decision up to December 2006. However, neither this Court nor the ALJ is qualified to determine what plaintiff's lifting capacity after 2006 was without some evidence from a medical expert regarding the issue. *See Ripley*, 67 F.3d 552, 557 (5th Cir. 1995); *Williams v. Astrue*, No. 08-30820, 2009 WL 4716027 at *3 n. 6 (5th Cir. 2009). After reviewing the record, the Court finds no substantial evidence supporting the ALJ's finding plaintiff retains the ability to lift a maximum of fifty pounds occasionally and twenty-five pounds frequently. The ALJ did explain his reasons for not crediting the evidence plaintiff was incapable of lifting enough to work at the medium level, and the ALJ never went so far as to opine what plaintiff's total abilities as compared

to a normally functioning, comparable person were. The ALJ did, however, state he believed plaintiff was not totally disabled. Even though the ALJ gave reasons for not believing plaintiff and did not go so far as to specify the degree to which plaintiff was not limited, there still must be substantial evidence supporting the ALJ's findings on each physical requirement listed in the regulations. *See Anderson*, 887 F.2d at 633. There is no such evidence in the record before the Court. Additionally, because there is no evidence that plaintiff can perform medium-level work, the ALJ's finding that plaintiff can return to his past relevant work, which the vocational expert testified was medium level (Tr. 412), must also be reversed as there is likewise no evidence supporting that determination. Consequently, the Commissioner's decision should be reversed and remanded for further development of the medical record and a redetermination of the claim.

The record does not support plaintiff's claim he was disabled due to back pain beginning in 2002. The medical evidence does, however, indicate plaintiff's back pain may have been disabling to the degree he could not have performed medium-level work as early as December 2006, when Dr. Carrizo indicated plaintiff had back pain. Upon remand, the ALJ should evaluate plaintiff's allegations, work history, medical evidence, and any other evidence to determine the date of onset of disability, if the ALJ determines a disability exists. *See* Social Security Ruling 83-20, 1983 WL 31249 at *2 (1983).

## V.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff EDDIE HILL not disabled and not entitled to disability benefits be REVERSED and the case be REMANDED for further proceedings consistent with this Report and Recommendation.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 29th day of August, 2011.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


* **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).